# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES FREEMAN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL NO. 3:CV-07-2191** |
| | : | |
| **DEPARTMENT OF CORRECTIONS, et al.,** | : | **(Judge Munley)** |
| | : | |
| | : | |
| **Defendants.** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

### Background

James Freeman ("Plaintiff"), an inmate presently confined at the State Correctional Institution, Cresson, Pennsylvania ("SCI-Cresson"), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983.  On June 4, 2010, Plaintiff's action was reassigned to the undersigned.

By Memorandum and Order dated February 22, 2011, this Court granted Defendant Ann Batdorf, R.N.'s motion for summary judgment.  See Doc. 226.   Remaining Defendants are the Pennsylvania Department of Corrections ("DOC"), and the following employees at Freeman's former place of confinement, the State Correctional Institution, Coal Township, Pennsylvania ("SCI-Coal Twp."):  Superintendent Joseph J. Piazza; Lieutenants Timothy Jordan and Stanley Moyer; Correctional Officers Ralph Studlack, Ronald Bowers, Lonni Fornwald and Matthew Lahr; Hearing Examiner Lisa Shay Kerns-Barr; Nurse Kyle Confer; and Medical Administrator Kathryn McCarty (hereinafter "Corrections Defendants").  Freeman's Complaint includes claims of retaliation, denial

1

of access to the courts, excessive force, denial of procedural due process, false misconduct reports, and denial of medical care.

Plaintiff has filed a motion which generally argues that he is entitled to entry of summary judgment "if not in hole, [sic] at least in part to some of the matters where facts, and material evidence is clear [sic] against the Defendants in this matter."  (Doc. 151, p. 5.)  Freeman's motion and supporting brief simply reassert his version of the facts and his claims of constitutional misconduct.

Corrections Defendants have submitted a cross motion seeking entry of summary judgment (Doc. 181)  arguing that entry of summary judgment in their favor is appropriate because: (1) the Eleventh Amendment bars Plaintiff's claims for monetary damages against them acting in their official capacities; (2)  denial of Plaintiff's misconduct and grievance appeals is not a basis for relief; (3) the DOC's UCC policy is constitutionally acceptable; (4) Defendant Jordan did not retaliate against Freeman; (5) Officer Bowers properly disposed of Freeman's property without issuing a confiscation slip; (6) there are no allegations asserted against some of the Corrections Defendants and Plaintiff cannot obtain relief from non-parties; (7) excessive force was not exercised against Plaintiff; (7) there was no deliberate indifference to Plaintiff's medical needs; (8) Hearing Examiner Kerns-Barr did not violate due process.  The cross summary judgment motions are ripe for consideration.

**Discussion**

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file,

2

and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

3

**Plaintiff's Summary Judgment Motion**

Freeman asserts that he is entitled to entry of summary judgment.  His motion and supporting brief reassert the facts and claims set forth in his Complaint and generally argue that those facts entitle him to entry of summary judgment.  However, Plaintiff does  not set forth any specific legal arguments as to why he is entitled to summary judgment.  Since Corrections Defendants have offered conflicting facts and Plaintiff has failed to establish that he is entitled to entry of summary judgment as a matter of law, his motion will be denied.

**Corrections Defendants' Motion for Summary Judgment**

**Official Capacities**

Corrections Defendants initially contend that any claims for monetary damages against them in their official capacities are precluded from consideration by the Eleventh Amendment.  See Doc. 182, p. 18.

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages.  Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003).  Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency.  Will v. Michigan Department of State Police, 491 U.S. 58, 70-71 (1989); Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251 (3d Cir. 2005).  As such, Freeman's damage claims brought against Corrections Defendants in their official capacities are considered to be against the state itself and are barred by the Eleventh Amendment.[1]

---

[1]    Freeman's claims for injunctive and declaratory relief against Defendants in their official capacities, however, are not barred by the Eleventh Amendment.  See Pennsylvania Federation of

(continued...)

4

**Denial of Misconduct and Grievance Appeals**

Plaintiff contends that Superintendent Piazza violated his constitutional rights when he denied Plaintiff's administrative appeals from adverse misconduct and grievance determinations. Corrections defendants argue that Piazza's responses to Freeman's administrative appeals is not a sufficient basis for a denial of due process claim.  (Doc. 182, p. 34.)

Inmates do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") Pursuant to those decisions, Plaintiff's dissatisfaction with responses to his grievances by the Corrections Defendants does not support a constitutional claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Accordingly, Superintendent Piazza's request for summary judgment with respect to any claim solely based upon said Defendant's responses or lack of response to Freeman's complaints, administrative grievances, and appeals will be granted.

**UCC Policy**

---

[1](...continued)
Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

It is undisputed that on May 12, 2007 Plaintiff was notified that he was under investigation for suspected violation of prison rules.  As part of the ensuing investigation, Freeman's cell was searched and a substantial amount of handwritten notes and typed material pertaining to the Uniform Commercial Code ("UCC") was confiscated from his cell by correctional staff.  In conjunction with the confiscation of those UCC materials, Plaintiff was issued two (2) misconduct charges for possessing UCC related materials.  Freeman contends that his UCC materials were personal property and that the DOC's UCC policy is not legitimate.

Corrections Defendants argue that the DOC's policy which deems UCC materials to be contraband is constitutionally acceptable.  (Doc. 182, p. 18.)   In support of their argument, they have submitted a declaration under penalty of perjury by Secretary Beard.  (Doc 184, Exhibit 5.)  According to Secretary Beard's declaration. "[b]y using UCC forms, redemptive filings, and other forms of paper terrorism, inmates have been successful in filing huge liens against public officials in Pennsylvania."  Id. at ¶ 7.  Beard adds that "voiding these bogus liens is "a time-consuming and resource-depleting process." Id. at ¶ 9.  As a result of those actions whereby "inmates have perverted the UCC" (Id. at ¶ 11) and in an effort to prevent inmates from misusing UCC filings as a method of retaliation against public officials, Beard states that the DOC enacted a UCC policy which prohibits inmates from possessing UCC related materials unless the prisoner "can demonstrate a legitimate interest or legal basis." Id. at ¶ 13.

Prisoners do not entirely forfeit all constitutional guarantees by reason of their conviction and subsequent confinement.  In Bell v. Wolfish, 441 U.S. 520, 547 (1979), the United States Supreme Court noted that "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve

internal order and discipline and to maintain institutional security.  The United States Supreme Court in Turner v. Safley, 482 U.S. 78, 89 (1987), set forth four factors to consider when addressing a challenge to a prison policy or regulation: (1) is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it" (citation omitted), 482 U.S. at 89; (2) does the prisoner have alternate means of "exercising the right that remains open to prison inmates," Id. at 90; (3) what "impact" would "accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally," Id.; and (4) what "ready alternatives" to the prison regulation exist.  Id.

The Supreme Court has also held that a prison regulation which impinges on inmates' constitutional rights is valid only if it is reasonably related to legitimate penological interests. O'Lone v. Shabazz, 482 U.S. 342 (1987)(reiterating recognition of the Turner standards as being the applicable test for determining the constitutionality of prison regulations).   Legitimate interests include: "deterrence of crime, rehabilitation of prisoners, and institutional security."  O'Lone, 482 U.S. at 348.  This standard implies that a balancing test must be applied between the prisoner's claims of constitutional infringement and the prison's need of internal order and security.

In Thornburgh v. Abbott, 490 U.S. 401 (1989), the Supreme Court required that prison regulations which restrict an inmate from receiving outside publications must be analyzed under the Turner reasonableness standard.  The Court ruled that an incoming publication which is found to be potentially detrimental to order and security may be excluded  Additionally, in Bell, 441 U.S. at 546, the Supreme Court noted that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights" of inmates.  Based upon a review of the challenged regulation and Secretary Beard's

undisputed declaration, the DOC's UCC policy was reasonably related to a legitimate penological

concern and the policy's provision only allowing prisoners having a legitimate need to possess UCC

related material satisfies the <u>Turner</u> factors.  Thus, the challenged UCC policy was constitutionally

acceptable .

Freeman indicates that he employed his UCC materials for the purpose of placing a common

law lien on his property in the amount of one hundred billion dollars in order to prevent his property

from being taken.  (Doc. 1, Facts, ¶ 13.)  It is apparent to this Court that based the purpose expressed

by Plaintiff, he has not established a legitimate need to possess any UCC related documents.  He has

equally failed to sufficiently demonstrate any plausible reason as to why he required any UCC

documents.  Moreover, Plaintiff has not shown that he suffered any actual injury as a result of the

purported confiscation of his UCC materials as required under <u>Lewis</u>.  Therefore, entry of summary

judgment in favor of the Corrections Defendants with respect to Freeman's claim of being subjected

to an unconstitutional DOC's UCC policy is appropriate.  <u>See Edminds v. Sobina,</u> 296 Fed. Appx.

214, 217 (3d Cir. 2008);  <u>Monroe v. Beard</u>, 536 F.3d 198 (2008) (the DOC's policy relating to

confiscation of UCC related materials is not constitutionally unreasonable under <u>Turner</u>);  <u>Hill v.

Everhart</u>, Civil No. 05–1346, slip op. at 12 (M.D. Pa. Aug. 31, 2007)(Conaboy, J.) .

**Retaliation**

According to the Plaintiff, after he filed a grievance against Lieutenant Jordan, said

Defendant and me "hasn't seen eye to eye."  (Doc. 1, History, ¶ 28.)  Freeman indicates that Jordan

retaliated against him by placing the prisoner in the RHU on May 11, 2007 pending an investigation,

authorizing the subsequent search of his cell in connection with the investigation, and permitting

confiscation of his UCC materials and other personal property items.

Corrections Defendants concede that a grievance filed by Freeman against Jordan was upheld on appeal.  (Doc. 182, p. 23.)   However, they argue that a viable retaliation claim has not been set forth because Plaintiff pled guilty to possession of contraband and cannot seriously dispute that he possessed UCC materials which were properly subject to confiscation. In support of their argument Corrections Officer Lonni Fornwald has submitted a declaration under penalty of perjury.  (Doc. 184, Exhibit 2.)  Therein, Fornwald states that she searched Plaintiff's cell on May 12-13, 2007 and confiscated various UCC related documents and thereafter issued Plaintiff a confiscation slip as well as two (2) misconduct charges for possessing UCC related material.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[2]  See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir.  2005).

---

[2]  Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  Krouse v. American

(continued...)

Once Plaintiff has made a <u>prima facie</u> case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." <u>Carter v. McGrady</u>, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. <u>Rauser</u>, 241 F.3d at 334.

There is no argument by Corrections Defendants that the first prong of <u>Rauser</u>, i.e., that a plaintiff be engaged in a constitutionally protected activity, was not satisfied by Freeman. With respect to the second prong of <u>Rauser</u>, the Corrections Defendants indicate that Plaintiff's placement in the RHU pending investigation, the search and related confiscation of UCC materials,[3] was adverse action sufficient to deter a prisoner of ordinary firmness from exercising his constitutionally protected conduct in satisfaction of the second <u>Rauser</u> requirement.

However, Corrections Defendants argue that the third prong of <u>Rauser</u> has not been satisfied because it is undisputed that Freeman possessed UCC materials which were contraband under DOC policy. They contend that Jordan's actions were not the result of a retaliatory motive, but rather were decisions which were appropriate under the circumstances and in accordance with prison regulations. There is no evidence to contradict these assertions.

---

[2](...continued)
<u>Sterlizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997).

[3] <u>See</u> <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989)(filing of false disciplinary charge is actionable if done in retaliation); <u>Allah</u>, 229 F.3d at 225 (confinement in administrative segregation can satisfy the adverse action requirement of <u>Rauser</u>.).

It is clear that Lieutenant Jordan had a duty to enforce DOC regulations and that the carrying out of said duties promoted a legitimate penological objective.  Plaintiff readily admits that he was in possession of UCC related materials.  This Court has already concluded that the DOC's UCC policy passes constitutional muster and Freeman did not have a legitimate need to possess UCC materials.  It is also undisputed that Plaintiff was found guilty of the underlying UCC related misconduct charge.  In light of those undisputed considerations, Plaintiff has failed to satisfy the third prong of Rauser.  Specifically, he has not presented any evidence to support a reasonable inference that his initiation of an administrative grievance was a substantial or motivating factor underlying the actions taken by Jordan with respect to the investigation regarding Plaintiff's possession of UCC materials.  This is simply not a case where the facts are unusually suggestive of a retaliatory motive, as contemplated in Krouse.  Since it is apparent that a rational trier of fact could not conclude that Jordan engaged in retaliatory conduct, said Defendant is entitled to entry of summary judgment with respect to that allegation.

**Confiscation Slip**

Plaintiff next contends that after searching his RHU cell on July 10, 2007, Correctional Officer Bowers threw away Freeman's shampoo, deodorant, legal size envelopes, and publication subscription cards without issuing the prisoner a confiscation slip.  (Doc. 1, History, ¶ 19.)

Corrections Defendants assert that Defendant Bowers is entitled to entry of summary judgment with respect to this allegation because, the personal property items "were not non-state issued items and the subject of a misconduct."  (Doc. 182, p. 26.)  In support of their argument, they have submitted a declaration under penalty of perjury by Bowers wherein said Defendant admits that he confiscated those items without issuing Plaintiff a confiscation slip because one was not required

11

under prison policy due to the fact that the discarded items were not non-state issued items and were not the subject of a misconduct.  (Doc. 184, Exhibit 6, ¶ 8.)

A civil rights claim also cannot be brought to vindicate a prisoner's right to property when the deprivation occurs as a result of a tortious and unauthorized act where an adequate remedy exists to compensate those who have suffered tortious loss at the hands of the state.  Parratt v. Taylor, 451 U.S. 527, 543-544 (1981).  The United States Supreme Court has extended Parratt to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy under state law for any loss suffered to his property, a civil rights claim is not available. Hudson v. Palmer, 468 U.S. 517, 532-533 (1984).  Consequently, regardless of whether the deprivation of property was the result of intentional or negligent conduct, a plaintiff may not obtain relief via a civil rights complaint if he or she has adequate alternative remedies.

Freeman can assert any claim relating to a deprivation of his personal property via the DOC's administrative remedy system.  He may also assert a loss of property claim in Pennsylvania state court.  Since Plaintiff has both state court and administrative remedies available to him, his claim of improper deprivation of personal property will not be entertained.

**Personal Involvement**

Corrections Defendants next contend that although Correctional Officers Fornwald and Lahr and Health Care Administrator  McCarty are listed as being Defendants in the caption of the Complaint, there are no allegations raised against those officials, thus warranting entry of summary judgment in their favor.  (Doc. 182, p. 17.)  The Corrections Defendants also maintain that the Complaint includes purported unconstitutional acts which are not attributed to any named defendant. It is also argued that Freeman cannot obtain relief against DOC employees mentioned in  the

Complaint (including in some instances, the prayer for relief) but not named as defendants.[4]

A plaintiff, in order to state an actionable civil rights claim under § 1983, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Civil rights claims brought cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of

---

[4]  Also named as a Defendant is the DOC.  The Supreme Court has ruled that a § 1983 action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit."  Alabama v. Pugh, 438 U.S. 781, 782 (1978). The Court of Appeals for the Third Circuit has similarly concluded that the Pennsylvania Board of Probation and Parole could not be sued because "it is not a 'person' within the meaning of Section 1983." Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977).

In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), it was reiterated that state agencies are not "persons" subject to liability in § 1983 actions brought in federal court.  The Court noted that a § 1983 suit against a state official's office was "no different from a suit  against the State itself."  Id. at 71.  "Will establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal or state court." Howlett v. Rose, 496 U.S. 356, 365 (1990).   Since the DOC is an agency of the Commonwealth of Pennsylvania, it is not a person and may not be sued under § 1983.  Accordingly, this Court will sua sponte grant dismissal in favor of Defendant DOC.

> participation or actual knowledge and acquiescence, however, must be made
> with appropriate particularity.

Rode, 845 F.2d at 1207.

Although the prayer for relief set forth in Plaintiff's pro se Complaint does mention Defendants Fornwald, Lahr, and McCarty, this Court agrees that the exact nature of the claims against those officials is unclear. (Doc. 1, p. 15.) In his cross summary judgment motion, Plaintiff indicates that Fornwald and Lahr were involved in the taking of his UCC related materials. (Doc. 151, p. 2.) Freeman adds that McCarty failed to take action in response to his health care related grievances. Id. This Court has already determined that the confiscation of Freeman's UCC materials was constitutionally acceptable and that § 1983 liability cannot be premised on action taken or not taken in response to institutional grievances. Since this Court has determined that the substance of the claims asserted against Lahr, Fornwald, and McCarty are meritless, those officials are entitled to entry of summary judgment and the issue of whether the pro se Complaint sufficiently asserts personal involvement against those officials does not need to be addressed.

Although liberal standards must be applied to pro se litigants such as Freeman, they are not, however, free to ignore the Federal Rules of Civil Procedure. A § 1983 complaint must contain at least a modicum of factual specificity, identifying the particular conduct of each defendant that is alleged to have harmed the plaintiff. Unconstitutional acts which are not alleged to have included involvement by any of the named defendants, simply cannot proceed. With respect to the additional argument that Plaintiff's Complaint improperly seeks relief against individuals not named as defendants, this Court concurs that Plaintiff cannot obtain relief against non-defendants.

**Excessive Force**

On August 2, 2007, Plaintiff contends that he was subjected to excessive force by Officers Bowers and Studlack.  According to the Complaint, those two officers forcefully tried to pull his arm through the wicket of his RHU cell.  (Doc. 1, History, ¶ 20.)   They then purportedly exerted additional force against the Plaintiff which included the twisting of his finger and the smashing of his arm in the wicket.  Freeman alleges that he suffered swelling to his hand, bruises on both biceps and injuries to his head, shoulder and elbow. ( Id. at ¶ 23.)

According to Corrections Defendants, prison staff attempted to remove Plaintiff's handcuffs and an attached tether after he had entered his cell.  Although Freeman knew that he was required to place his hands through the wicket so that the handcuffs and attached tether could be removed, a tug of war ensued when staff tried to obtain control of the handcuffs.  They assert that based upon the undisputed facts, the amount of force employed was only that which was needed to maintain and restore discipline.  (Doc. 182, p. 32.)  Corrections Defendants claim entitlement to entry of summary judgment on the basis that the undisputed facts established that the amount of force exercised against Freeman was reasonable and used in a good faith effort to restore institutional discipline.

Officer Bowers' supporting declaration does not address this claim.  (Doc. 184, Exhibit 6.) Defendant Studlack has also submitted a supporting declaration acknowledging that he and Bowers escorted Plaintiff back to his RHU cell on August 2, 2007.  (Id. at Exhibit 7, ¶ 6.)  Freeman was "handcuffed in the back with his palms facing out and his thumbs up. " (Id. at ¶ 5.)  A tether was also used to control the Plaintiff's movement.  After Plaintiff was inside his cell, Studlak avers that while holding the tether he instructed the prisoner to place his hands through the wicket so that his handcuffs could be removed.  According to the declaration, Freeman permitted Studlack to uncuff his right hand but refused to present his left hand to be uncuffed.

15

Rather, after Plaintiff's right hand was uncuffed, he allegedly backed away, refused several orders to present his left hand.  Lieutenant Moyer arrived and took control of the tether to allow Officer Studlack to get his hand out of the wicket.  "Freeman then tried to pull Lt. Moyer into the wicket causing the tether to break free from the handcuffs." ( Id. at ¶ 13.)  As a result, while Moyer had control of the tether, Freeman had the handcuffs.  The wicket was then secured and about five minutes later, Plaintiff surrendered the handcuffs.  Studlack opines that this incident was caused by Plaintiff's failure to present his left hand to be uncuffed and that the force used in attempting to remove the handcuffs was in accordance with prison policy.

A declaration by Deputy Superintendent Robert McMillan asserts that Plaintiff had been placed in the RHU for disciplinary reasons and the prisoner was familiar with the procedure for being uncuffed and untethered upon being returned to his cell.  McMillan noted that when circumstances warrant, a tether is used to control an inmate's movements while outside his cell.  McMillan concurs that Freeman's behavior warranted the employment of a tether.  (Id. at Exhibit 8, ¶ 9.)  The Deputy Superintendent explains that when a tether is used the prisoner is handcuffed in the back with his palms facing out and his thumbs up.  The tether is attached to the handcuffs with a metal leash clip or metal ring.  According to McMillan, the wicket is approximately 20 inches long and 7 inches high.  Due to its size, when a prisoner refuses to cooperate in being uncuffed, "the movement of officers attempting to remove security restraints is severely circumscribed."  (Id. at ¶ 13.)  McMillan agrees that the force employed in attempting to remove the handcuffs was reasonable, necessary and consistent with DOC policy.  The Deputy Superintendent adds that because the force required to break a tether is considerable it is apparent that Freeman continued to struggle.

16

In order to constitute cruel and unusual punishment, a correctional officer's use of force must involve the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.  In a later ruling, the United States Supreme Court recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.), cert. denied, 531 U.S. 821(2000); Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(even a de minimis use of force, if repugnant to the conscience of mankind, may be constitutionally significant).  As explained in Fuentes:

> Resolution of an Eighth Amendment claim therefore 'mandate[s] an inquiry into a prison official's state of mind.'  Two considerations define that inquiry.  We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections.  If not, our inquiry is at an end.  However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind.  In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain.  'What is necessary to establish an "unnecessary and wanton infliction of pain. . ." varies according to the nature of the alleged constitutional violation.'

206 F.3d at 344.

In both his Complaint and brief opposing the cross summary judgment motion, Plaintiff states that on the date of the incident, he was "placed in the cell and uncuffed."  (Doc. 1, History, ¶

17

21.)  He asserts Studlack then started pulling on my left arm through the wicket so "I stuck my hand out more to get him off track."  (Id.)  According to Plaintiff, Officer Studlack then switched to my right hand which "was open" and started pushing my finger in the opposite direction. (Id.)  After awhile, Freeman states that he was able to gain control of his finger.  Next, Plaintiff indicates that pushing and pulling of his left arm was undertaken by all parties.  According to Freeman, the correctional officers then apparently recuffed his left arm, at which time he "broke loose" and pulled my arm into the cell with the cuff still on it and breaking the tether in the process. (Id.)

In light of Plaintiff's contention that he was already uncuffed, it is unclear what Freeman means when he describes his right hand as being open.  Second, Plaintiff offers no explanation as to why Studlack would start pulling his left arm towards the wicket if  the prisoner had already been uncuffed.  It is equally unclear how if the Plaintiff was already in his cell uncuffed, Studlack was able to  reach through the wicket and grab both of his uncuffed hands.[5]

Regardless of those unresolved issues, this is clearly not a case where the Plaintiff claims that he was subjected to an intentional sadistic beating.  Nor is there any contention that the officers used any force once the handcuff issue was resolved.  Moreover, Plaintiff acknowledges that to some extent this was a mutual exchange of force, conduct which could be described as a tug of war between the parties.

It is apparent to this Court that under the factors announced in Brooks and Whitley, the

_____

[5] As detailed herein, Plaintiff's recitation of the incident is confusing.  The United States Supreme Court has stated that "when opposing parties tell two different stories one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

actions taken by the Corrections Defendants were not an intentional sadistic attempt to inflict harm

on Plaintiff but rather a good faith effort to diffuse a volatile situation.  See Wilson v. Horn, 971 F.

Supp. 943, 948 (E.D. Pa. 1997)( a plaintiff must establish that the force was applied maliciously and

sadistically, instead of in good faith).  In conclusion, based upon Plaintiff's acknowledgment that he

was at times engaging in aggressive behavior, there was a need for the minimal force which was

applied against Freeman.  Moreover, the force which was exercised  was not disproportionate to the

aggressive behavior admittedly exhibited by Plaintiff and the force applied resulted in minimal

injury (abrasions).  Under these circumstances, no reasonable jury could find the wanton and

unnecessary infliction of pain required to establish an Eighth Amendment violation with respect to

the August 2, 2007 incident.

**Deliberate Indifference**

It is undisputed that Plaintiff was involved in an altercation with SCI-Coal Twp. Correctional

officers on August 2, 2007.  As a result, he sought but allegedly was denied adequate medical

attention for alleged injuries he suffered to his hand and shoulders.  Corrections Defendants contend

that entry of summary judgment with respect to this claim is appropriate because Plaintiff was

provided with appropriate and timely treatment.

In support of their argument, a declaration by Registered Nurse Kyle Confer has been

submitted.  (Doc. 184, Exhibit 9.)  Confer states on August 2, 2007 he was called to see Freeman in

his cell.  According to Confer, Plaintiff stated there had been a "minor altercation."  (Id. at ¶ 6.)

Nurse Confer states that he evaluated Plaintiff's claim of having a broken right ring finger by

conducting an examination.[6]  His exam found no edema but some decrease of range when Freeman

was bending his finger.  Plaintiff also indicated that he had cuff marks on his right wrist and  his

right shoulder had been jammed against a door frame.  Upon examining the prisoner's shoulder area,

Confer found no edema and full range of motion.  Confer observed abrasions "which I would

describe as being rug or brush burns" but saw no edema or any other marks on Plaintiff's body.  (Id.)

The nurse told Freeman to follow up with sick call and to keep his abrasions clean.  Confer notes

that Plaintiff's requests for a band aid, ice pack, or wrap were denied because he concluded that such

care was not medically necessary.  Nurse Confer also saw no injury that would warrant pain

medication.

      Prison officials are required under the Eighth Amendment to provide basic medical treatment

to prisoners.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S.

97 (1976)). The proper analysis for evaluating a deliberate indifference claim is whether a prison

official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer v.

Brennan, 511 U.S. 825, 841 (1994).

      An inmate must allege acts or omissions by prison officials sufficiently harmful to evidence

deliberate indifference to a serious medical need to set forth a viable Eighth Amendment medical

claim,.  See Spruill v. Gillis, 372 F.3d at 235-36; Natale v. Camden Cty. Correctional Facility, 318

F.3d 575, 582 (3d Cir. 2003).  Courts reviewing such claims must determine if the defendant was:

(1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs

(the objective component).  Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d

---

     [6]  Confer adds that he recorded Freeman's complaints and his observations in the prisoner's
institutional medical records which have also been submitted for consideration.

Cir. 1987).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

In addressing Nurse Batdorf's summary judgment motion, this Court's February 22, 2011 Memorandum and Order observed that Plaintiff has not come forward with any medical expert evidence which would establish that his injuries satisfy the serious medical need requirement of Estelle. See Barclay v. Shearin, 86 Fed. Appx. 495, 496 (3d Cir. 2004)((speculative assertions are not sufficient to create a genuine issue of material fact when prisoner fails to rebut prison officials' proof that he does not have a serious medical need). It was also noted that Plaintiff's undisputed institutional medical records showed that the injuries suffered on August 2, 2007 consisted only of minor abrasions and soreness to his right ring finger and shoulder. Moreover, x-rays taken of Plaintiff's shoulder and hand were negative.

Based upon those factors, it was concluded that Plaintiff's injuries did not constitute a serious medical need. See Mines, 2009 WL 839011 *8 (swollen and stiff knee not a serious medical need where x-rays are negative); Wesson v. Iglesby, 910 F.2d 278, 284 (5th Cir. 1990)(swollen wrists not a serious medical need); Price v. Engert, 589 F.Supp.2d 240, 246 (W.D.N.Y. 2008)(no serious

medical need when x-rays reveal no fracture to knee, wrist and hand injuries).  As a result, entry of summary judgment was granted in favor of Nurse Batdorf on the basis that Plaintiff has failed to satisfy the serious medical need requirement of <u>Estelle</u>.   There have been no developments in the record since the entry of the February 22, 2011 Memorandum and Order which would warrant a different conclusion.  Based on this Court's prior determination that Plaintiff did not have a  serious medical need, entry of summary judgment is likewise appropriate in favor of the Corrections Defendants with respect to the pending deliberate difference claim.

**<u>Due Process</u>**

With respect to Defendant Hearing Examiner Kerns-Barr, Plaintiff alleges that said Defendant's evidentiary rulings and credibility determinations during  institutional disciplinary hearings regarding the charges that Freeman possessed contraband UCC materials and refused to obey an order by Correctional Officer Studlack violated due process.  Corrections Defendants contend that Plaintiff has not asserted a viable violation of the due process protections established in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-73 (1974) .  (Doc. 182, p. 38.)

In <u>Wolff,</u> the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  <u>Id</u>. at 556.  The Court also recognized five requirements of due process which must be provided to inmates in a prison disciplinary proceeding before penalties can be imposed.

The United States Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472, 480-84 (1995) shifted the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner.  <u>Id</u>. at 481.  In <u>Sandin</u>, the Supreme Court reasoned, <u>inter alia</u>, that "[d]iscipline by prison officials in response to a wide range of

misconduct" is expected as part of an inmate's sentence. Id. at 485.  Courts within this circuit, applying Sandin in various actions, have found no merit in procedural due process claims presented regarding institutional disciplinary hearings which result in disciplinary custody placement.  See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706-08  (3d Cir. 1997)(no liberty interest in avoiding fifteen (15) month placement in administrative custody because said confinement was not atypical); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest).

On May 17, 2007, Freeman had disciplinary hearings on his two UCC related misconducts. Plaintiff entered guilty pleas and was sanctioned to a total of two hundred and seventy (270) days of disciplinary custody time.  As a result of a misconduct charge stemming from the August 2, 2007 incident, Plaintiff was sanctioned to an additional ninety (90) day term of disciplinary custody.  In total, as a result of the three (3) misconduct charges referenced in Freeman's action he was sanctioned to three hundred and sixty (360) days of disciplinary custody.

Considering the rules of law set forth in Sandin and the subsequent line of decisions by the Third Circuit Court of Appeals, this Court finds that Plaintiff's action to the extent that it alleges denial of procedural due process during his disciplinary proceedings is meritless because the resulting three hundred and sixty (360) day period of disciplinary confinement imposed did not implicate a protected liberty interest.  See Pressley v. Johnson, 268 Fed. Appx. 181, 184 (3d Cir. 2008)("360 days of disciplinary custody does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.").  Accordingly, entry of summary judgment in favor

23

of Defendant Kerns-Barr is appropriate.   An appropriate Order will enter.


                                        **BY THE COURT:**


                                        <u>**s/James M. Munley**</u>
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**

**DATED:   March 31 , 2011**


**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES FREEMAN,** | : |
| | : |
| **Plaintiff** | : |
| | : |
| **v.** | : **CIVIL NO. 3:07-CV-2191** |
| | : |
| **DEPARTMENT OF CORRECTIONS,** | : **(Judge Munley)** |
| **et. al.,** | : |
| | : |
| **Defendants** | : |

## ORDER

**AND NOW,** to wit, this 31st day of March, 2011, for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** that:

1.     Corrections Defendants' motion for summary judgment (Doc. 181) is **GRANTED.**

2.     Plaintiff's motion for summary judgment (Doc. 151) is **DENIED** with respect to the claims against the Corrections Defendants.

3.     The Clerk of Court is directed to **CLOSE** the case.

            **BY THE COURT:**

            **s/James M. Munley**
            **JUDGE JAMES M. MUNLEY**
            **United States District Court**